FILED

2008 Nov-17  AM 09:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:07-cv-01909-JEO |
| v. | ) | |
| | ) | |
| BADDLEY & MAURO, LLC, THOMAS E. BADDLEY, JR., and JEFFREY P. MAURO, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

_____This matter is before the court on the defendants' motion for summary judgment. (Doc. 15).[1]  Also before the court is the plaintiff's cross-motion for final summary judgment.  (Doc. 18). Upon consideration of the record, the submissions of the parties and the relevant law, the court finds that the defendants' motion for summary judgment is due to be granted in part and denied in part, and the plaintiff's cross-motion for final summary judgment is due to be granted in part and denied in part.

## I.      PROCEDURAL BACKGROUND

Plaintiff Great American Insurance Company ("Great American" or "the plaintiff") filed the present complaint for declaratory judgment against the defendants, Baddley & Mauro, LLC, Thomas E. Baddley, Jr., and Jeffrey P. Mauro ("Baddley & Mauro" or "the defendants"), on October 18, 2007.  (Doc. 1).  Great American seeks a declaratory judgment holding that it has no duty to defend and/or to indemnify Baddley & Mauro under an insurance policy concerning

---

[1] References to "Doc. __" are to the documents as numbered by the clerk of court in the court's record of the case.

claims pending against the defendants.  *Id*.  The defendants have filed a motion for summary

judgment arguing that there is no controversy in dispute and that the plaintiff has a duty to defend

and a duty to indemnify them under the contract.  (Doc. 15).  On July 7, 2008, the defendants filed

counterclaims against the plaintiff for breach of contract, bad faith failure to defend, and bad faith

failure to negotiate.  (Doc. 16).  The plaintiff filed a cross-motion for summary judgment and a

response to the defendants' counterclaims.  (Doc. 18).  The parties have consented to the exercise

of jurisdiction by the undersigned magistrate judge, pursuant to 28 U.S.C. § 636(c).  (Doc. 9) ("In

accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case

hereby voluntarily consent to have a United States magistrate judge conduct any and all further

proceedings in this case, including the trial, and order the entry of a final judgment.").

## II.    FACTUAL BACKGROUND[2]

Baddley & Mauro represented Serra Chevrolet, Inc. ("Serra Chevrolet") in litigation with

General Motors ("GM") which resulted in a mediation that occurred on December 15, 2006, in

Atlanta, Georgia.  (Doc. 15-5[3] at ¶¶ 4-6; Doc. 21-3[4] at ¶ 3).  According to Anthony Serra, the

President of Serra Chevrolet, near the end of the mediation, he separately met with GM's

representative, Dave Borchelt.  During their private discussions, they

> talked about a framework for potentially resolving [their] dispute.  Subject to
> approval by GM and by [Anthony Serra's] family, and subject to an agreed upon
> written settlement agreement, [they] agreed that the case could be settled along the
> following lines.  First, GM would make a cash payment to Serra Chevrolet of One

---

[2]The facts set out below are gleaned from the parties' submissions and are viewed in a light most favorable to the plaintiff.  They are the "'facts' for summary judgment purposes only. They may not be the actual facts *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994)." *Underwood v. Life Insurance Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

[3]Document 15-5 is also Exhibit D to document 15.

[4]Document 21-3 is also Exhibit B to document 21.

Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00).  Second, GM
would make available to Serra Chevrolet the sum of One Million Seven Hundred
Fifty Thousand Dollars ($1,750,000.00) as a credit towards the acquisition of a
Chevrolet dealership.  We agreed that if no acceptable dealership investment was
reached within two years, GM would pay Serra in cash 80% of One Million Seven
Hundred Fifty Thousand Dollars ($1,750,000.00).

(Doc. 21-3 at ¶ 4).  After this meeting, Anthony Serra talked with Tom Baddley and Jeff Mauro

regarding the details.  Baddley complained that if the case settled on those terms, it would impact

the payment of the attorneys' fee.  *Id*. at ¶ 5.  Serra then agreed that if the settlement included the

credit, the firm would "receive its 40% fee, after expenses, from what was to be the first

installment under a settlement with GM."  *Id*.  The settlement agreement was not reduced to

writing, but the parties agreed to continue negotiating.  *Id*. at ¶ 6.

Anthony Serra informed Tom Baddley the following Monday, December 18, 2006, that he

did not want the second component of the agreement to include a credit towards the purchase of a

dealership, but wanted "a straight cash payment" in the same amount and he wanted it secured by

a letter of credit.  *Id*. at ¶ 7.  He also wanted his son, Kevin Serra added as a "co-dealer" to the

Chevrolet Dealer Agreement.  *Id*.  Anthony Serra had further discussions with Borchelt

concerning these demands.  Anthony Serra states that they agreed to the cash payment instead of

the credit.  *Id*. at ¶ 8.[5]

On January 16, 2007, Serra Chevrolet received the proposed settlement agreement from

Baddley.  Thereafter, Anthony Serra requested that Marty Brill, a Serra Chevrolet employee, meet

with Baddley & Mauro "to begin discussing the appropriate expenses to be deducted from the

anticipated settlement amounts."  *Id*. at ¶ 10.  Concerning the request that counsel be paid from

---

[5]Anthony Serra also notes that on the same day as his conversation with Borchelt, he received a copy of a letter
Baddley sent to Joe Lines at GM incorrectly referencing the credit as part of the proposed settlement.  *Id*. at ¶ 9.

the first settlement check, Anthony Serra asked Marty Brill "to tell them that Serra Chevrolet would require a release as part of the negotiations between Serra Chevrolet and Baddley & Mauro." *Id*. at ¶ 10.

A settlement agreement with GM was executed on January 26, 2007. *Id*. at ¶ 11. Baddley wrote a letter to GM on January 30, 2007, requesting that GM issue the first check under the settlement to Baddley & Mauro. *Id*. at ¶ 12. On February 1, 2007, Anthony Serra received a letter from Baddley that included an internal accounting of all of the case related expenses. Serra did not agree with the accounting. *Id*. at ¶ 13.

Baddley & Mauro notified Serra Chevrolet on February 13, 2007, that the firm had received the first installment check from GM. It was payable only to the firm and was deposited into the firm's "trust account and would not be disbursed until the accounting had been concluded." *Id*. at ¶ 14. Serra Chevrolet and Baddley & Mauro were not able to reach a resolution concerning the amount of the allowable expenses. *Id*. Serra Chevrolet then hired other counsel to represent it in the dispute with Baddley & Mauro. *Id*. at ¶ 15. Ultimately, Baddley & Mauro issued checks to the firm in the amount of $1,277,500.00 and to Serra Chevrolet in the amount of $472,500.00. (Doc. 15 at ¶ 14).

On March 7, 2007, Baddley & Mauro filed a state declaratory action against Serra Chevrolet seeking an order "setting forth that [Baddley & Mauro] is and was entitled to all of the attorneys' fees that have been paid and disbursed." (*Baddley & Mauro, LLC v. Serra Chevrolet, Inc*., CV 2007–00904).[6] Baddley & Mauro notified Great American of the filing of the lawsuit on the following day. (Doc. 15 at 5-6).

---

[6]The complaint is located at document 18, pages 76-78.

On March 14, 2007, Serra Chevrolet filed a complaint in this court asserting that they never agreed to modify the fee agreement with Baddley & Mauro and that Baddley & Mauro breached their fiduciary duties by contacting GM and instructing them to deliver the first settlement check to the firm's offices instead of Serra.  *Id.*  Serra Chevrolet also alleges that the defendants breached their contractual and fiduciary duties by claiming certain costs and expenses that were due to be paid under the fee agreement.  *Id.*  The allegations included claims for racketeering, embezzlement, breach of federal civil duties, breach of fiduciary duties, intentional interference with contractual and business relations, malpractice, and money paid by mistake in federal court.  *Id.* at 5.  (*Serra Chevrolet, Inc. v. Thomas E. Baddley, et al.*, 2:07-cv-0462-SLB).[7] Great American was notified of this lawsuit on March 19, 2007.  *Id.* at 6.  On May 7, 2007, Serra Chevrolet amended its federal complaint to include conversion and breach of fiduciary duty claims.  *Id.*  On May 16, 2007, Baddley & Mauro requested that Great American defend them against all the claims and further requested approval to retain a specific attorney to represent them in the Serra Chevrolet litigation.  (Doc. 15-7 and 15-8).[8]  On August 8, 2007, Baddley & Mauro again requested that Great American defend them and determine any coverage issues.  (Doc. 15-9).[9]

Serra Chevrolet next filed counterclaims for breach of contract, conversion, breach of fiduciary duty, unjust enrichment, money had and received, and a request for constructive trust in the state court action on August 20, 2007.  (Doc. 15 at 6).

---

[7]The complaint is located at exhibit C to document 15.

[8]Documents 15-7 & 15-8 are also Exhibits F & G to document 15.

[9]Document 15-9 is also Exhibit J to document 15.

On October 18, 2007, counsel for Great American informed Baddley & Mauro in writing that their claims for representation and indemnification had been denied. *Id*. at 8. Specifically, he stated that "the only inescapable conclusion . . . is that your demand for coverage is simply a non-covered fee dispute." (Doc. 18 at 139). On the same date that the letter was written, Great American filed this suit seeking a declaratory judgment that it has no duty to defend or indemnify Baddley & Mauro. (Doc. 1).

## III.    STANDARD OF REVIEW

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91, L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *See* FED. R. CIV. P. 56(a) and (b). Once the moving party has met her burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the

'depositions, answers to interrogatories, and admissions on file, ' designate 'specific facts

showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.  The nonmoving party

need not present evidence in a form necessary for admission at trial; however, the movant may not

merely rest on the pleadings.  *Id*.

After a motion has been responded to, the court must grant summary judgment if there is

no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(c).  The substantive law will identify which facts are material and which are

irrelevant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505,91 L. Ed. 2d 202

(1986).  "[T]he judge's function is not himself to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## IV.    ANALYSIS

### A.    No Justiciable Controversy

The defendants initially assert that they are entitled to summary judgment in this matter

because "there [is] no justiciable controversy" concerning the rights and obligations of Great

American to defend and to indemnify Baddley & Mauro under the insurance policy.  (Doc. 15 at

10-11).  More specifically, Baddley & Mauro assert that "[declaratory judgment] is unnecessary

herein since Great American had already made a determination of its obligations under the policy

at the time it instituted the instant complaint for declaratory judgment."[10]  *Id*.  Baddley & Mauro

cite no controlling authority to support this contention.  (Doc. 15 at 11; Doc. 21 at 5-6).

The applicable law is clear:

---

[10]Baddley & Mauro premise this argument on the letter from Great American dated October 18, 2007, denying coverage under the policy. This letter is dated the same date as the filing of the present complaint.

The "actual controversy" requirement of the Act mirrors the "case or controversy" requirement of Article III, section 2 of the United States Constitution. *Provident Life & Accident Insurance Co. v. Transamerica-Occidental Life Insurance Co.*, 850 F.2d 1489, 1491 (11th Cir. 1988). In the statutory context, that requirement looks to "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *GTE Directories Publishing Corp. v. Trimen America, Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1995) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)).

Even when an "actual controversy" exists that falls "within [the] jurisdiction" of the district court, the plaintiff has no absolute right to a federal forum. "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995). The Act "confer[s] unique and substantial discretion in deciding whether to declare the rights of litigants," and the district court's decision whether to exercise jurisdiction is reviewable on appeal only for abuse of that discretion. *Id.* at 286, 290, 115 S. Ct. 2137.

*Employers Mut. Cas. Co. v. All Seasons Window & Door Mfg., Inc.*, 387 F. Supp. 2d 1205, 1207 (S.D. Ala. 2005).

The defendants' argument that there is no controversy because Great American has already determined via its letter notice on October 18, 2007, that Baddley & Mauro is not entitled to a defense under the policy is not sustainable. (Doc. 15 at 10-11; Doc. 21 at 5-6). As just noted, they cite no authority to support the contention that the letter precludes a finding that a controversy exists. Great American has unequivocally determined that it is not under a duty to defend Baddley & Muaro. The letter simply constitutes notification of its position. The defendants dispute that conclusion. Thus, the court finds that there is an actual controversy and the matter is ripe for review at this juncture.

**B.** **Lack of a Judgment in Underlying Actions**

    **1.** **Duty to Indemnify**

The defendants further argue that it is premature for Great American to request a declaration of its indemnity obligations as no judgments have been entered in the underlying actions.  (Doc. 15 at 10).  In support of this contention, Baddley & Mauro cite to *Employers Mut. Cas. Co.*, 387 F. Supp. 2d 1205 and *State Farm Fire & Cas. Co. v. Myrick*, 2007 WL 3120262 (M.D. Ala. Oct. 23, 2007).  In *State Farm Fire & Casualty*, the court refused to determine whether there was a duty to indemnify until the underlying case was decided due to the fact that the insured could prevail in that action.  *State Farm Fire & Cas.*, 2007 WL 3120262 at *2.  In *Employers Mutual Casualty Company*, the court found it inappropriate to exercise jurisdiction before the liability of the insured was determined.  *Employers Mut. Cas. Co.*, 387 F. Supp. 2d at 1211-12.  However, the court did note that there is no binding precedent on the issue from the Eleventh Circuit Court of Appeals.  *Id*. at 1209 and n.6.

To the extent that Great American seeks a determination of its duty to indemnify the defendants under the insurance policy, the court finds that the issue is premature.  *See, e.g., Pennsylvania Nat. Mut. Cas. Ins. v. Roberts*, 550 F. Supp. 2d 1295, 1302 (S.D. Ala. 2008) (because the underlying action remains ongoing at this time, the duty to indemnify aspect of this action is due to be dismissed because any indemnification obligations are hypothetical and contingent at this time); *Colony Ins. Co. v. Floyd's Professional Tree Service*, 2008 WL 2705123, *3 (M.D. Ala. July 9, 2008) (the defendant may still prevail in the underlying suits and if he does, the indemnification issue is moot and the court would never reach the issue, therefore, resolving the duty to indemnify before the underlying state cases conclude risks wasting judicial resources);

*W.G. Yates & Sons Const. Co. v. Zurich American*, 2008 WL 161921 at *6 (January 8, 2008) ("There is abundant support in the case law for the proposition that 'an insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit.'"); *Employers Mut. Cas. Co.*, 387 F. Supp. 2d at 1211-12 ("It is simply inappropriate to exercise jurisdiction over an action seeking a declaration of the plaintiff's indemnity obligations absent a determination of the insureds' liability to the movants."); *Myrick*, 2007 WL 3120262, *2 ("Resolving the duty to indemnify before the underlying case is concluded could potentially waste resources of the court because the duty to indemnify could become moot if the insured prevails in the underlying lawsuit."). There have been no judgments rendered in the underlying actions and, accordingly, the issue is not appropriate for adjudication at this juncture. This aspect of the defendants' motion for summary judgment is, therefore, due to be granted and the claim dismissed without prejudice.

### 2.    Duty to Defend

The issue regarding the duty to defend is distinguishable.  The underlying contract clearly requires that Great American defend the insured in certain instances.  The parties disagree as to whether the pending actions are the types of proceedings to which the contract applies.  As noted by the court in *Floyd's Professional Tree Service*:

> In contrast to the duty to indemnify, courts recognize a justiciable controversy exists when the insurance company denies it has an obligation to defend the insured under the policy.  *See Am. Fid.* [*& Cas. Co. v. Pennsylvania*], 280 F.2d [453,] 461 [(5th Cir. 1960)].  The decision whether an insurance company is obligated to defend must be made at the preliminary stage of the proceedings.  *See Auto-Owners Ins. Co. v. Toole*, 947 F. Supp. 1557, 1566 n. 25 (M.D. Ala.1996) (citations omitted).  "An insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured."  *Ajdarodini v. State Auto*

> *Mut. Ins. Co*., 628 So. 2d 312, 313 (Ala. 1993).  Here, controversy exists as to
> whether Colony is obligated to provide a defense to Floyd under the insurance
> policy-making the duty to defend ripe for review. . . .

*Id*., 2008 WL 2705123 at \*3.  The undersigned finds that this issue–the duty to defend–is properly

before the court.

     **C.**    **Coverage Under the Policy**

It is undisputed that the defendants were insured at the time involved in the underlying

litigation with Serra Chevrolet.  (Doc. 15 at 12-13).  The relevant issue is whether the disputes

concerning the Serra litigation are covered under the insurance policy.  *Id*.  More specifically, the

parties dispute whether the litigation between Serra Chevrolet and the defendants evolved out of

"professional services" rendered by the defendants.  *Id*. at 13.

The pertinent insurance policy provides that Great American "will pay . . . all Damages

and Claim Expenses arising out of a Claim or Early Reported Incident which [the insureds] first

become aware of and . . . report . . . in writing during the Policy Period."  (Legal Professional

Liability Policy (Doc. 15, Ex. A, ¶ B)).  A claim is defined as "any demand received . . . for

money or services . . . arising out of your acts, errors or omissions in providing Professional

Services. . . ."  *Id*. at ¶ A.1.  "Professional Services" are defined in the policy as follows:

> Professional Services means services you perform for a client in your capacity as:
>
>     a.  a lawyer;
>     b.  a mediator or arbitrator;
>     c.  a notary public; or
>     d.  as an administrator, conservator, executor, guardian, trustee, receiver,
>         or in any similar fiduciary capacity, provided that such services are
>         connected with and incidental to your profession as a lawyer.

*Id*. at ¶ A.10.

According to the defendants, the claims asserted by Serra Chevrolet against them fit within sections "a" and "d" of the "Professional Services" definition. (Doc. 15. at 3). The defendants argue that Serra Chevrolet's claims, including racketeering, breach of fiduciary duties, malpractice, money paid by mistake, breach of contract, conversion, breach of fiduciary duty, unjust enrichment and money had and received,

> arise out of and are directly related to its professional services as counsel for Serra. Such claims center around an agreement reached during a mediation of the litigation with GM, given that the settlement involved two (2) separate payments over time, and also potentially contemplated an initial monetary payment by GM, followed by a capital contribution from GM towards the purchase of another automobile dealership. This modified fee agreement between Serra Chevrolet and Baddley & Mauro (which has been acknowledged by Serra) was integrally related to Serra's resolution of its litigation with GM, and therefore was part and parcel of the legal services performed by Baddley & Mauro on behalf of Serra Chevrolet. Accordingly, the claims alleged by Serra readily correlate with the professional services performed by Baddley & Mauro as its legal counsel.

*Id*. at 14; *see also* Doc. 21 at 7. The defendants also note that the "further discussions with GM regarding certain terms [of the settlement agreement] after mediation as well as discussions with Serra in determining the nature and extent of all costs and expenses attributable to the litigation, were performed in [Baddley & Mauro's] fiduciary capacity to Serra Chevrolet." (Doc. 15 at 14). They further argue that the conversations with Serra Chevrolet during the mediation and the subsequent communications in finalizing the settlement agreement and in determining the fees and costs "were <u>at a bare minimum</u> 'connected with and incidental to Baddley & Mauro's profession as lawyers.'" *Id*. at 15 (emphasis in original); Doc. 21 at 10-11.[11]

The general rule is that "[a]n insurance company's duty to defend its insured is

---

[11]Similarly, the defendants argue that the "modified fee agreement between Serra Chevrolet and Baddley & Mauro . . . was integrally related to Serra's resolution of its litigation with GM, and therefore was part and parcel of the legal services performed by Baddley & Mauro on behalf of Serra Chevrolet." (Doc. 15 at 14).

determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured." *Colony Ins. Co.*, 2008 WL 2705123, at *3 (quoting *Ajdarodini v. State Auto Mut. Ins. Co.*, 628 So. 2d 312, 313 (Ala. 1993)).  As recently noted by United States District Judge William H. Steele:

> In determining the scope of [a] duty to defend, several principles of Alabama law are relevant.  As an initial matter, the Court bears in mind that an "insurer's duty to defend is more extensive than its duty to [indemnify]." *Tanner* [*v. State Farm Fire & Cas. Co.*], 874 So. 2d [1058,] 1063 [(Ala. 2003)] (citation omitted); *see also Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1011 (Ala. 2005) (explaining that insurer's broad duty to defend arises from [the] principle that ambiguous insurance policies must be construed liberally in insured's favor).  Furthermore, "[w]hether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint." *Tanner*, 874 So. 2d at 1063.  That said, a court is not confined to the allegations of the underlying complaint, but may additionally look to facts which may be proved by admissible evidence. *Id.* at 1064.  The Alabama Supreme Court has succinctly summarized the applicable legal standard for determining the existence of a duty to defend as follows: "The insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between insurer and insured prove a covered accident or occurrence." *Id.* at 1065.  If both covered claims and non-covered claims are pleaded, then the insurer's duty to defend extends at least to those covered claims. *Id.*

*W.G. Yates & Sons Const. Co.*, 2008 WL 161921 at *7.

Baddley & Mauro properly look beyond the labels of Serra Chevrolet's allegations in arguing that they are covered under the insurance policy.  They contend that the claims revolve around a modification of the fee agreement reached during mediation between Serra Chevrolet and GM and that this was "integrally related to Serra's resolution of its litigation with GM, and therefore was part and parcel of the legal services performed by Baddley & Mauro." *Id.* at 14. They also contend that Serra's allegations that Baddley & Mauro breached their fiduciary duties

13

in the communications instructing GM to tender the initial settlement proceeds to the defendants'

law office and by imposing certain costs and expenses which were not due to be reimbursed

under the fee agreement fit within the definition of "professional services" under the relevant

policy.[12]  *Id.* at 15.  They conclude that the litigation with Serra Chevrolet is more than just a fee

dispute and that it is covered by the policy.  *Id.*  The court disagrees.

Serra Chevrolet's claims against Baddley & Mauro are a fee dispute.  The claims do not

arise out of the representation the defendants provided Serra Chevrolet as its lawyers as defined

by the relevant insurance policy, but arise out of the dispute over what the ultimate fee

arrangement was between them.  The fact that the fee arrangement and the dispute over expenses

took place during and related, in part, to the mediation and the settlement of the underlying

dispute is not dispositive of the issue before this court.  It places the dispute in context, but does

not change the fact that the claims do not concern "professional services" as they are defined

under the policy.  *See Reliance Nat'l Ins. Co. v. Sears, Roebuck & Co.*, 58 Mass. App. Ct. 645,

646-48, 792 N.E. 2d 145, 147-48 (2003) (stating "that the billing function of a lawyer is not a

professional service.  Billing for legal services does not draw on special learning acquired

through rigorous intellectual training."); *National Union Fire Ins. Co. of Pittsburgh, PA. v. Shane*

---

[12]The defendants argue that there are four legal issues presented by the Serra Chevrolet disputes that warrant inclusion of those matters under the insurance policy.  They are:

(1) whether the parties entered into a legally binding modification of [their] fee agreement during the mediation of the Serra v. General Motors litigation; (2) whether certain changes to the settlement agreement between GM and Serra, which occurred after mediation, affected or altered the obligations owed between the parties under the modified fee agreement reached between Serra and Baddley & Mauro; (3) whether Baddley & Mauro breached its fiduciary duties to Serra through its subsequent communications with General Motors wherein it instructed GM to tender payment of the initial settlement proceeds to its offices; and (4) whether Baddley & Mauro breached its fiduciary duties to Serra through its imposition of certain litigation costs and expenses which Serra alleges were not properly attributable to the litigation and therefore were not due to be reimbursed under the parties' fee arrangement.

*Id.* at 16-17; Doc. 21 at 3.

*and Shane Co.*, 78 Ohio App. 3d 765, 768-71, 605 N.E.2d 1325, 1327-29 (1992) (finding that "by the terms of the policy, the fee dispute . . . was neither part of the coverage nor contemplated by the parties").

The allegations that Baddley & Mauro breached their fiduciary duty by instructing GM to send the check to their law offices stems directly from the fee dispute. The defendants were not acting "as an administrator, conservator, executor, guardian, trustee, receiver, or in any similar fiduciary capacity" at the time of these communications but instead were acting pursuant to the perceived fee arrangement. Accordingly, the court finds that the claims by Serra Chevrolet against Baddley & Mauro evolving from the communications with GM are not covered under the insurance policy definition of professional services.

The court's findings and conclusions concerning the nature of the claims are consistent with the defendants' contentions in the underlying state and federal actions that Serra Chevrolet's allegations against them merely involve a fee dispute. Further, their contentions in the underlying matters undermine their arguments herein and lend support to the court's finding that the cases against them do in fact involve a non-covered fee dispute.[13] The defendants' motion for summary judgment and the plaintiff's cross-motion for final summary judgment are therefore due to be denied in part and granted in part.

---

[13]In the state court pleadings (CV200700904), Baddley & Mauro contend that the suit merely involves a fee dispute. By way of example, in their complaint for declaratory judgment, they state: "A dispute has arisen concerning the timing of payment of attorneys' fees earned by Baddley & Mauro" (doc. 18, ex. B (attached to ex. 1) at ¶ 9 (Doc. 18 at 76 of 147)) and in their motion for a protective order, they state: "This case involves a fee dispute concerning the timing of payment of attorneys' fees earned by Baddley & Mauro in its representation of Serra during almost a decade of litigation" (doc. 19, ex. 9 at 1 (sealed)).

In the federal court pleadings, Baddley Mauro also argue that the suit (2:07-cv-0462-SLB) concerns a fee dispute. For instance, in their conclusion to the defendants' reply in opposition to the plaintiff's post-hearing brief, they state: "This case is not a RICO case but rather is a fee dispute between attorneys and their former client" (doc. 19, ex. 6 at 4 (sealed)) and in their motion for sanctions and their memorandum in support of their motion to dismiss or, in the alternative, for a stay or abstention, they state: "This case is a simple, straightforward dispute concerning the timing of payment of attorneys' fees owed by Plaintiff to Defendant, Baddley & Mauro, LLC." (doc. 19, ex. 7 at 1 and ex. 8 at 1 (sealed)).

**D.      Defendants' Counterclaims on Breach of Contract, Bad Faith to Defend, and Bad Faith to Negotiate**

As the court finds there is no duty to defend and any duty to indemnify claim is premature, the defendants' counterclaims, including the breach of contract claim and the bad faith failure to defend and failure to negotiate claims are legally deficient for the reasons previously stated herein.  Accordingly, the plaintiff's cross motion for summary judgment is due to be granted as to the same.[14]

**E.      The Plaintiff's Motion is Premature**

In their reply brief, the defendants assert that the plaintiff's motion for summary judgment on their state law counterclaims is premature because it was filed only twenty-two days after the claims were advanced.  (Doc. 21 at 18).  They, therefore, ask that the court deny the motion or continue the matter until they have had "an opportunity to conduct meaningful and necessary discovery on these claims."  *Id*. at 19.

The applicable law was well-stated in *Morrow v. Israel Aircraft Industries*, *LTD*, 2007 WL 2826148 (M.D. Fla. 2007):

> . . . .  The Eleventh Circuit Court of Appeals has recognized that summary judgment should not be granted until the nonmovant has had an adequate opportunity for discovery.  *See Snook v. Trust Co. of Georgia Bank of Savannah*, N.A., 859 F.2d 865, 870 (11th Cir. 1988); *WSB-TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir. 1988); *see also Clairmont v. Sun Terminals, Inc*., Case No. 06-61040-CIV-MARRA/JOHNSON, 2007 WL 646563, at * 1 (S.D. Fla. Feb.26, 2007).  Indeed, the Eleventh Circuit has stated that "[t]he party opposing a motion for summary judgment has a right to challenge the affidavits and other factual materials submitted in support of the motion by conducting sufficient discovery so as to enable him to determine whether he can furnish opposing affidavits."  *See*

---

[14]In view of the court's determination of the foregoing issues, it pretermits any discussion concerning the plaintiff's argument that the damages sought in the underlying lawsuits by Serra are not covered under the policy (see doc. 18 at 16 and doc. 21 at 12-15) and the estoppel grounds also raised by the plaintiff (see doc. 18 at 17-19 and doc. 21 at 15-18).

*Snook*, 895 F.2d at 870.  Thus, the nonmovant should be permitted the opportunity to conduct discovery if the information sought during discovery would be relevant to the issues presented in the motion for summary judgment.  *See id*.  However, the nonmovant is responsible for informing the district court of any outstanding discovery relevant to the issues raised.  *See Cowan v. J.C. Penney Co., Inc*., 790 F.2d 1529, 1530 (11th Cir. 1986).

> Rule 56(f) of the Federal Rules of Civil Procedure provides that a district court may deny a motion for summary judgment or order a continuance to permit affidavits to be obtained or depositions to be taken if it appears from the affidavit of the party opposing summary judgment that he or she cannot present by affidavit facts essential to justify his or her position.  *See* Fed. R. Civ. P. 56(f).  The Eleventh Circuit has held that "the opposing party need not file an affidavit pursuant to Federal Rule of Civil Procedure 56(f) in order to invoke the protection of that rule because the written representation by [the opposing party's] lawyer, an officer of the court, is in the spirit of Rule 56(f) under the circumstances." *Fernandez v. Bankers Nat'l Life Ins. Co*., 906 F.2d 559, 570 (11th Cir. 1990) (internal quotations omitted) (alternation in original); *see also Clairmont*, 2007 WL 646563, at * 1.  In addition, the Eleventh Circuit has recognized that "the interests of justice will sometimes require a district court to postpone its ruling on a motion for summary judgment even though the technical requirements of Rule 56(f) have not been met."  *See Snook*, 859 F.2d at 871.  Nevertheless, a nonmovant seeking the protection of Rule 56(f) may not rely on vague assertions that additional discovery will produce needed but unspecified facts, rather that party must demonstrate to the Court how postponement of the ruling will enable him to rebut the movant's contentions.  *See Wallace v. Brownell Pontiac-GMC Co., Inc*., 703 F.2d 525, 527 (11th Cir. 1983).

*Morrow*, 2007 WL 2826148 at *4.

The court does not find the defendants' request that the motion on the counterclaims be denied or continued persuasive.  In the usual case, such a motion most likely would be granted.  This case, however, is different.  The defendants have not demonstrated how additional discovery is relevant to the legal issues raised in the motion for summary judgment.  The court is simply presented with "vague assertions" that are insufficient.  *Id*.  Accordingly, the court finds that the motion to continue is due to be denied.

V.       **CONCLUSION**

For the reasons set forth above, this court finds that the "Defendants' Motion for Summary Adjudication" (doc. 15) is due to be granted in part and denied in part and the plaintiff's "Cross Motion For Final Summary Judgment And Response To Defendants' Counterclaim" (doc. 18) is to be granted in part and denied in part.  Accordingly, the court finds that Great American is not under a duty to defend the defendants in the underlying actions. Therefore, the court also finds that summary judgment is due to be granted on the related state law claims for breach of contract, bad faith to defend, and bad faith failure to investigate as stated in the defendants' counterclaim.  The court further finds that with respect to the duty to indemnify claim this matter is due to be dismissed without prejudice.  An appropriate order will be entered contemporaneously herewith.

**DONE** this 17th day of November, 2008.

*John E. Ott*

JOHN E. OTT
United States Magistrate Judge

18